Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VII

| LIXY PÉREZ LLANA<br><br>*Recurrente*<br><br>v.<br><br>CORPORACIÓN DEL CENTRO CARDIOVASCULAR DE PUERTO RICO Y DEL CARIBE<br><br>*Recurrida* | TA2025RA00380 | Revisión Administrativa procedente de la Corporación del Centro Cardiovascular de Puerto Rico y del Caribe<br><br>Caso Núm.:<br>2025-RAPCR-054<br><br>Sobre:<br>Revisión Administrativa de Clasificación de Puesto y Retribución |
| --- | --- | --- |

Panel integrado por su presidente, el Juez Rodríguez Casillas, la Juez Barresi Ramos y la Jueza Santiago Calderón

Santiago Calderón, Jueza Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 26 de enero de 2026.

Comparece ante nos, Lixy Pérez Llana (señora Pérez Llana o recurrente) mediante *Recurso de Revisión Administrativa* y solicita la revocación de la *Determinación Final de Revisión Administrativa de Clasificación de Puesto y Retribución, Caso 2025-RAPCR-054*[1] (*Determinación Final*) emitida y notificada el 7 de noviembre de 2025 por la Corporación del Centro Cardiovascular de Puerto Rico y el Caribe (CCCPR o recurrida). En el referido dictamen, el CCCPR le informó a la recurrente que mantenía el nuevo título de clasificación de Asesora Legal Principal.

Por los fundamentos expuestos a continuación, se ***confirma*** la *Determinación Final* impugnada.

**I.**

La controversia ante nos, se originó el 7 de abril de 2025[2], cuando la recurrente recibió un correo electrónico con relación a la

---

[1] Apéndice 2 del *Recurso de Revisión Administrativa*.
[2] Recibida el 21 de abril de 2025.

implementación del nuevo Plan de Clasificación y Retribución[3]. En lo específico, se le informó lo siguiente:

> Considerando lo anterior, le informamos que con efectividad al 1 de julio de 2024, como resultado del estudio realizado, el puesto que usted ocupa ha sido clasificado como ASESOR(A) LEGAL PRINCIPAL y estará ubicado en la escala salarial 12 perteneciente al Plan de Clasificación y Retribución del servicio de carrera, conforme a los deberes y responsabilidades asignadas al mismo. Toda vez que su sueldo actual $6,555.01 es superior al mínimo de la nueva escala salarial asignada, su clasificación no conllevará un ajuste en salario por la implementación del nuevo plan. Así se ha establecido en las Normas de implementación aprobadas por la JSAF y el Centro[4].

El 21 de abril de 2025, la Directora de Recursos Humanos y Relaciones Laborales, María Franco, circuló por correo electrónico las *Normas para la Implantación de los Nuevos Planes de Clasificación y Retribución del Servicio de Carrera y Confianza,* así como el *Procedimiento Interno para Solicitar Revisión Administrativa por la Implementación del Plan de Clasificación y Retribución de los Empleados Unionados y No Unionados del Servicio de Carrera*[5].

Inconforme, el 21 de mayo de 2025, la recurrente sometió una *Solicitud de Revisión Administrativa*[6] con el propósito de reevaluar el título ocupacional del nuevo puesto y la retribución asignada. Por su parte, el 7 de noviembre de 2025, el CCCPR le comunicó a la señora Pérez Llana la *Determinación Final de Revisión Administrativa de Clasificación de Puesto y Retribución, Caso 2025-RAPCR-054*. Allí, esbozó que el Comité Revisor había realizado la evaluación del caso y determinó que la recurrente se mantenía en la escala asignada número doce (12) con una retribución mayor al básico de ochenta por ciento (80%), llevándolo a la media del noventa por ciento (90%). Asimismo, informó que mantenía el nuevo título de la clasificación, Asesora Legal Principal, lo que constituía un nuevo salario de ochenta y siete mil ochocientos treinta y seis dólares ($87,836.00)

---

[3] Apéndice 3 del *Recurso de Revisión Administrativa.*
[4] *Íd.*, pág. 2.
[5] Apéndice 6 del *Recurso de Revisión Administrativa.*
[6] Apéndice 4 del *Recurso de Revisión Administrativa.*

anuales equivalente a una remuneración de siete mil trescientos diecinueve dólares con sesenta y siete centavos ($7,319.67) mensuales.

Insatisfecha con la determinación, el 5 de diciembre de 2025, la recurrente presentó el recurso ante nuestra consideración y le imputó al recurrido los siguientes señalamientos de error:

1. Erró la Corporación del Centro Cardiovascular de Puerto Rico y del Caribe en la determinación de escala de puesto y salario asignado a la Lcda. Pérez.

2. Erró la Corporación del Centro Cardiovascular de Puerto Rico y del Caribe en la determinación del cambio de título ocupacional de Directora Asociada a Asesora Legal Principal, sin proveer una Hoja de Deberes que sustente el cambio, ya que se desconoce los criterios tomados en consideración para los cambios en funciones, de haber alguno y si dicha acción de personal constituye o no un descenso.

3. Erró la Corporación del Centro Cardiovascular de Puerto Rico y del Caribe en no compensar el trabajo hecho por la Lcda. Pérez durante 29 años, ahorrándole a la Corporación el salario del puesto de Director o su equivalente en el puesto de confianza.

4. Erró la Corporación del Centro Cardiovascular de Puerto Rico y del Caribe al implementar procedimientos alternos distintos uno del otro, cuando ya contaba con el Reglamento para la Administración de los Recursos Humanos y Relaciones Laborales de la Corporación del Centro Cardiovascular de Puerto Rico y del Caribe, Reglamento Núm. 9254, aprobado por la Junta de Directores de la Corporación y registrado en el Departamento de Estado el 21 de enero de 2021.

El 9 de diciembre de 2025[7], emitimos una *Resolución* concediéndole término a la agencia recurrida hasta el 8 de enero de 2026 para que presentara su alegato en oposición. Así pues, la recurrida compareció mediante *Alegato en Oposición a Revisión Administrativa.* Allí, adujo que el nuevo Plan de Clasificación de Puestos y Retribución de la CCCPR atendió adecuadamente la compensación aplicable, más aún, se le asignó un noventa por ciento (90%) del punto medio de la escala salarial correspondiente a su clase de puesto. Esto, debido a que la retribución actual ascendía a ochenta y siete mil ochocientos treinta y seis dólares anuales

---

[7] Notificada el 10 de diciembre de 2025.

($87,836.00), cuantía que se encontraba por encima, y de forma significativa, de la compensación que devenga un Abogado Principal en el Gobierno Central. Añadió, que las alegaciones *de la recurrente implicarían desarticular la estructura salarial establecida y contravenir el principio de uniformidad que rige tanto a las agencias del Gobierno Central como a las corporaciones públicas y que el nuevo Plan de Clasificación de Puestos y Retribución de la CCCPR asignó remuneraciones de acuerdo con las funciones propias de cada clase de puesto, aplicación que fue correcta en el caso de la recurrente, máxime cuando dicho Plan fue debidamente evaluado y avalado por la JSAF, luego de realizarse ajustes conforme a la propia solicitud de la CCCPR*[8].

Posteriormente y sin autorización de este Foro Intermedio, el 20 de enero de 2026, la recurrente presentó *Escrito al Amparo de la Regla 68 (b) del Reglamento de este ilustrado foro.*

Así, con el beneficio de la comparecencia de ambas partes, procedemos a resolver.

**II.**

**-A-**

La Ley de la Judicatura del Estado Libre Asociado de Puerto Rico establece la autoridad del Tribunal de Apelaciones para revisar "decisiones, órdenes y resoluciones finales de organismos o agencias administrativas"[9]. Por su parte, la Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico (LPAU) establece el marco de revisión judicial de estas decisiones[10]. Cónsono con lo anterior, nuestra función revisora se limita a delinear la discreción de las entidades administrativas para garantizar que sus decisiones se encuentren en el marco de los

---

[8] *Alegato en Oposición a Revisión Administrativa*
[9] Art. 4006(c) de la Ley Núm. 201-2003, 4 LPRA sec. 24(y)(c).
[10] Sección 4.5 de la Ley Núm. 38-2017, 3 LPRA sec. 9675.

poderes delegados y sean consecuentes con la política pública que las origina[11].

Debido a la vasta experiencia y conocimiento especializado que tienen las agencias administrativas sobre los asuntos que le son encomendados, los foros revisores les conceden gran consideración y deferencia a sus decisiones[12]. Al mismo tiempo, esta facultad revisora delimita la discreción de los organismos administrativos a modo de asegurar que estos ejerzan sus funciones dentro de los márgenes de las facultades que le fueron delegadas por ley[13]. Es por esta razón, que la revisión judicial se limita a determinar si la agencia actuó de manera arbitraria o ilegal, o de forma tan irrazonable que sea considerado un abuso de discreción[14]. Hay que señalar que las determinaciones de los organismos administrativos están cobijadas por una presunción de corrección y legalidad que debe respetarse, mientras la parte que las impugne no demuestre con suficiente evidencia que la decisión no está justificada[15].

Así pues, la revisión judicial de una decisión administrativa se circunscribe a determinar si hay evidencia sustancial en el expediente para sostener la conclusión de la agencia o si esta actuó de forma arbitraria, caprichosa o ilegal[16]. El criterio rector es la razonabilidad de la actuación de la agencia recurrida[17]. Por ello, al momento de evaluar una determinación administrativa se debe considerar si: (1) el remedio concedido por la agencia fue apropiado;

---

[11] *Torres Rivera v. Policía de PR*, 196 DPR 606, 625-626 (2016); *Empresas Ferrer v. A.R.Pe.*, 172 DPR 254, 264 (2007); *Mun. de San Juan v. J.C.A.*, 149 DPR 263, 279 (1999).

[12] *Super Asphalt v. AFI y otro*, 206 DPR 803, 819 (2021); *OCS v. Point Guard Ins.*, 205 DPR 1005, 1026 (2020); *PRHOA v. Confederación Hípica*, 202 DPR 509, 521 (2019).

[13] *Vázquez v. Consejo de Titulares y Junta de Directores del Condominio Los Corales*, 2025 TSPR 56, 215 DPR ___ (2025).

[14] *Pérez López v. Depto. de Corrección*, 208 DPR 656, 673 (2022); *Super Asphalt v. AFI y otro*, *supra*, pág. 821; *Trigo Margarida v. Junta Directores*, 187 DPR 384, 394 (2012).

[15] *Trigo Margarida v. Junta Directores*, *supra*, págs. 393-394; *Mundo Ríos v. CEE et al.*, 187 DPR 200, 219 (2012), citando a *Rebollo v. Yiyi Motors*, 161 DPR 69, 77 (2004).

[16] *Vélez v. A.R.Pe.*, 167 DPR 684, 693 (2006).

[17] *Super Asphalt v. AFI y otro*, *supra*; *González Segarra et al. v. CFSE*, 188 DPR 252, 276 (2013); *Trigo Margarida v. Junta Directores*, *supra*, pág. 394.

(2) la decisión de la agencia está sostenida en evidencia sustancial que obra en el expediente administrativo visto en su totalidad; y (3) las conclusiones de derecho fueron correctas[18].

Ahora bien, si la decisión del organismo administrativo no estuvo basada en evidencia sustancial; erró en la aplicación o interpretación de las leyes o los reglamentos que se le encomendó administrar; o actuó de manera irrazonable, arbitraria o ilegal, al realizar determinaciones carentes de una base racional; o si la actuación lesionó derechos constitucionales fundamentales, la deferencia debida a la agencia debe ceder[19].

Si una parte afectada por un dictamen administrativo impugna las determinaciones de hecho, esta tiene la obligación de derrotar con suficiente evidencia, que la determinación no está justificada por una evaluación justa del peso de la prueba que tuvo ante su consideración[20]. De no identificarse y demostrarse esa otra prueba en el expediente administrativo, las determinaciones de hechos deben sostenerse por el tribunal revisor, pues el recurrente no ha logrado rebatir la presunción de corrección o legalidad[21].

Sobre las determinaciones de derecho, el Tribunal Supremo ha dicho que distinto a las determinaciones de hecho, el tribunal las puede revisar en todos sus aspectos, sin sujeción a norma o criterio alguno[22]. Sin embargo, esto no quiere decir que un foro apelativo pueda descartar las conclusiones y sustituir el criterio del ente

---

[18] *OEG v. Martínez Giraud*, 210 DPR 79, 89 (2022); *Rolón Martínez v. Supte. Policía*, 201 DPR 26, 35-36 (2018); *Pagán Santiago et al. v. ASR*, 185 DPR 341, 358 (2012).
[19] *OEG v. Martínez Giraud*, *supra*, pág. 90; *Super Asphalt v. AFI y otro*, *supra*, pág. 819, citando a *Torres Rivera v. Policía de PR*, *supra*, pág. 628; *IFCO Recycling v. Aut. Desp. Sólidos*, 184 DPR 712, 744-745 (2012).
[20] *González Segarra et al. v. CFSE*, *supra*, pág. 277; *Batista, Nobbe v. Jta. Directores*, 185 DPR 206, 216-217 (2012); *Pereira Suárez v. Jta. Dir Cond.*, 182 DPR 485, 511 (2011).
[21] *González Segarra et al. v. CFSE*, *supra*; *Pereira Suárez v. Jta. Dir Cond.*, *supra*, pág. 513, citando a *Domínguez v. Caguas Expressway Motors, Inc.*, 148 DPR 387, 398 (1999); *O.E.G. v. Rodríguez*, 159 DPR 98, 118 (2003).
[22] *Vázquez v. Consejo de Titulares y Junta de Directores del Condominio Los Corales*, *supra*.

administrativo por el suyo. En estos casos, también los tribunales apelativos les deben deferencia a los organismos administrativos[23].

**-B-**

La Ley Núm. 8-2017, según enmendada, mejor conocida como la "Ley para la Administración y Transformación de los Recursos Humanos en el Gobierno de Puerto Rico" (Ley Núm. 8-2017), se aprobó con el propósito de declarar un estado crítico económico y fiscal que requirió unos cambios en la administración de los recursos humanos de las agencias cubiertas por el estatuto[24]. Asimismo, el estatuto persigue centralizar la administración del sistema de recursos humanos en una sola entidad, con el fin de promover la uniformidad, equidad y transparencia de los asuntos relacionados con el personal gubernamental[25].

De conformidad con lo anterior, en el Artículo 4 de la Ley Núm. 8-2017[26] se creó la Oficina de Administración y Transformación de los Recursos Humanos en el Gobierno de Puerto Rico (OATRH) para centralizar aquellas funciones del Sistema de Administración y Transformación de Recursos Humanos del Gobierno de Puerto Rico (Sistema de Recursos Humanos)[27]. Es decir, el Sistema de Recursos Humanos es administrado por la OATRH con propósito principal de aplicar, reforzar, evaluar y proteger el principio de mérito en el servicio público[28]. Concerniente a las corporaciones públicas o público privadas, éstas deberán adoptar reglamentos de personal que incorporen el principio de mérito a la administración de sus recursos humanos[29].

---

[23] *González Segarra et al. v. CFSE, supra*, págs. 277-278; *Batista, Nobbe v. Jta. Directores, supra*, pág. 217, citando a *Rebollo v. Yiyi Motors, supra*.
[24] Véase, Exposición de Motivos de la Ley Núm. 8-2017.
[25] Véase, Art. 2 sec. 2.1 de la Ley Núm. 8-2017, 3 LPRA sec. 1469a.
[26] Art. 4 sec. 4.1 de la Ley Núm. 8-2017, 3 LPRA sec. 1470.
[27] Art. 4 sec. 4.3 (2) (a) de la Ley Núm. 8-2017, 3 LPRA sec. 1470b.
[28] Véase, Art. 5 sec. 5.1 de la Ley Núm. 8-2017, 3 LPRA sec. 1471.
[29] Véase, Art. 5 sec. 5.2 de la Ley Núm. 8-2017, 3 LPRA sec. 1471a.

Por otra parte, la Ley Núm. 8-2017, *supra*, le confirió a la OATRH la responsabilidad de centralizar y unificar los planes de clasificación de puestos, así como establecer planes de retribución uniforme para las agencias e instrumentalidades públicas adscritas al Gobierno Central[30]. Es menester puntualizar que, aunque la retribución no forma parte del principio de mérito, esta se encuentra estrechamente vinculada a la clasificación de puestos, lo cual se entrelaza con la remuneración[31].

### III.

En el caso de autos, la señora Pérez Llana alegó que la CCCPR incidió al determinar el cambio de puesto y de salario sin justificación, la falta de compensación adecuada por veintinueve (29) años de trabajo y al aplicar procedimientos inconsistentes a pesar de contar con un reglamento aplicable para la administración de los recursos humanos. No le asiste la razón, veamos.

Por estar íntimamente relacionados, discutiremos en conjunto los cuatro señalamientos de error.

Destacamos que el Gobierno de Puerto Rico aprobó la Ley Núm. 8-2017 con el fin de *unificar los planes de clasificación y retribución en la administración central donde los empleados en distintas agencias e instrumentalidades del Gobierno de Puerto Rico con funciones iguales o similares estén clasificados bajo el sistema de clasificación*[32]. Así pues, la OATRH, en unión con la Secretaria de la Gobernación y la JSAF establecieron una estructura guiada por procedimientos y regulaciones para lograr la consecución de la política pública. Ante ello, la CCCPR en cumplimiento con la política pública instauró su plan de clasificación y retribución, el cual fue elaborado por la OATRH y conllevaba la reprogramación de fondos

---

[30] Véase, Art. 2 sec. 2.1 (4) de la Ley Núm. 8-2017, *supra*; Art. 4 sec. 4.3 (2) (p) de la Ley Núm. 8-2017, *supra*; Art. 6 sec. 6.2 (1) de la Ley Núm. 8-2017, 3 LPRA sec. 1472b; Art. 7 sec. 7.2 (1) de la Ley Núm. 8-2017, 3 LPRA sec. 1473a.
[31] Véase, Art. 6 sec. 6.1 de la Ley Núm. 8-2017, 3 LPRA sec. 1472a.
[32] 3 LPRA, secc. 1469a.

de conformidad con la sección 204 (C) de la Ley Promesa[33], autorizado por JSAF.

Fíjese que, en el caso de marras, previo a que la recurrida implementara el nuevo Plan de Clasificación y Retribución, la señora Pérez Llana ostentaba un puesto de Directora Asociada en el Área de Asesoramiento Legal de dicha corporación con una retribución de setenta y ocho mil seiscientos sesenta dólares con doce centavos. ($78,660.12). Por su lado, la OATRH realizó su análisis a base de los datos sometidos para su consideración, e incluyó estudios de mercado sobre la compensación correspondiente a abogados en puestos de naturaleza similar y concluyó que el puesto debía ser clasificado como Asesora Legal Principal.

Según se desprende de la determinación final de la CCCPR, la OATRH le asignó a la recurrente la clase de Asesora Legal Principal a la escala diez (10) con un salario de cincuenta y ocho mil ciento ochenta y nueve dólares ($58,189.00) anuales. Sin embargo, luego de que la CCCPR abogara por la señora Pérez Llana ante la JSAF, dicho organismo autorizó su reclasificación a la escala doce (12), equivalente a un salario anual de setenta y ocho mil setenta y seis dólares ($78,076.00).

Asimismo, surge de la determinación recurrida, que se recomendaba mantener la clasificación de la recurrente como Asesora Legal Principal en la escala doce (12) al noventa por ciento (90%) del punto de la media en el plan de retribución, lo que constituía un nuevo salario de ochenta y siete mil ochocientos treinta y seis dólares anuales ($87,836.00). Es menester puntualizar que la señora Pérez Llana estaba por encima del ochenta por ciento (80%) del salario base, por lo cual, no hubo un impacto directo en su salario a raíz de la implementación del Plan. Además, la cuantía

---

[33] 48 USC 2101.

adjudicada se encontraba por encima, y de forma significativa, de la compensación que devenga un Abogado Principal en el Gobierno Central.

La correspondiente escala salarial adjudicada a la recurrente evidencia el propósito de uniformidad que promueve la Ley 8-2017, *supra*.

Finalmente, colegimos que la implementación del plan de clasificación y retribución fue un proceso técnico, estructurado y conforme al ordenamiento jurídico, por lo cual merece entera credibilidad y deferencia.

**IV.**

Por los fundamentos que anteceden, ***confirmamos*** la *Determinación Final* recurrida. Además, ordenamos el desglose del *Escrito al Amparo de la Regla 68 (B) del Reglamento de este Ilustrado Foro* presentado del 20 de enero de 2026 por la parte recurrente, así como de la *Moción en Solicitud de Término para Replicar* presentada el 22 de enero de 2026 por la parte recurrida.

Notifíquese.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones
